No. 14391

IN THE SUPREME COURT OF THE STATE OF MONTANA

1979

---

IN RE THE MARRIAGE OF

RICHARD F. SCHULTZ,

Petitioner and Respondent,

and

CARLA JEAN SCHULTZ,

Respondent and Appellant.

---

Appeal from:  District Court of the Eleventh Judicial District,
Honorable Robert Sykes, Judge presiding.

Counsel of Record:

For Appellant:

Hash, Jellison, O'Brien and Bartlett, Kalispell, Montana
M. Dean Jellison argued, Kalispell, Montana

For Respondent:

Hoyt and Lewis, Great Falls, Montana
Tom L. Lewis argued, Great Falls, Montana

---

Submitted:  March 23, 1979
Decided:  JUL 3 0 1979

Filed: JUL 3 0 1979

<u>Thomas J. Kearney</u>
Clerk

Mr. Justice Daniel J. Shea delivered the Opinion of the Court.

The wife in a dissolution of marriage proceeding appeals from the amended judgment of the Flathead County District Court and challenges the property distribution and maintenance provisions of the decree.

The parties were first married in June 1967. They were divorced about a year and a half later, but remarried in December 1969. The present proceeding for dissolution of marriage was commenced in July 1977.

At the date of dissolution, the husband was 46 years old and employed as a railroad brakeman-conductor, earning about $1,350 per month. The wife was 37 years old and unemployed, although she has worked as a bartender and waitress.

Both parties had former marriages. The wife had been married three times before. She brought three minor children into her marriages with the husband. Although she was entitled to child support for one of her three minor children, she never received any. The husband had been married once before, and he entered his marriages with the wife with a single child support obligation from his former marriage. No children were born of the marriages between the parties.

The primary asset of the marital estate was a twenty-acre tract of land, known as the Haskill Creek property, located east of Whitefish, Montana, in Flathead County. A small log house on this land served as the marital home of the parties and the wife's children. The husband originally contracted to purchase the real property for $11,000 before his marriages to the wife, and approximately $5,000 of the purchase price was paid by the husband during his marriages to the wife. At dissolution, the court gave the Haskill Creek property a current value of $40,000. The remainder of marital assets consisted of miscellaneous personal

property which the court valued at $7,170. The court found that the allowable marital debts amounted to $4,280.

On July 28, 1977, the husband commenced this action for dissolution of marriage. As trial approached, there appeared to be no dispute as to the terms of dissolution except for the wife's demand for a half interest in the Haskill Creek property, for maintenance in the amount of $500 per month, and for attorney fees.

Trial was held without a jury on December 22, 1977 and February 16, 1978. Most of the testimony dealt with valuation of the marital assets and the nature of the parties' relationship during marriage. One of the court's findings of fact summarized the situation as follows:

> "Considerable strife, turmoil and controversy occurred throughout the two marriages of the parties. Drinking on the part of both parties has contributed to the problem. The respondent [wife] left the family home with the children on several occasions; and the separation of the parties dissipated the assets and monies accumulated during the course of the marriage on the part of both parties."

On March 23, 1978, the court awarded the Haskill Creek property to the husband and ordered that the wife be paid $6,000 as her interest therein. The husband was to assume all the marital debts (except $500 owed on the wife's organ) including the balance due on the Haskill Creek property. In disposing of the personal property, the court apparently attempted to award the items requested by each party and, in order to equalize the difference in values, required the husband to pay $235 to the wife. The court made no provision for maintenance.

On April 3, 1978, the wife moved to amend the decree. She sought provisions for the requested maintenance and an increase of her interest in the Haskill Creek property from $6,000 to $17,000. After a telephone conference with the

-3-

parties' attorneys, the court amended its findings and conclusions with provisions to the effect that the husband contributed approximately $20,100 toward support of the wife's children during the marriage and that he was entitled to consideration of this in the distribution of marital property. The court also declared that the wife's "request for support is denied."

The wife appeals and presents the following issues for our review:

1. Whether, in distribution of the marital estate, the District Court erred by considering the husband's contribution toward support of the wife's children by a former marriage.

2. Whether the District Court erred in making no finding of fact relative to the wife's entitlement to maintenance.

3. Whether the District Court erred by failing to dispose of the parties' personal property.

The wife contends that the court erred by considering the husband's contribution toward support of her minor children in distribution of the marital property. The husband argues that since he had no legal duty to support his stepchildren under section 61-117, R.C.M. 1947, now section 40-6-217 MCA, the court's consideration of support contributions was proper.

The statute upon which the husband relies states that a stepparent is not legally bound to support his stepchildren, "but if he receives them into his family and supports them it is presumed that he does so as a parent. . ." Section 61-117, R.C.M. 1947, now section 40-6-217 MCA (emphasis added). The evidence was undisputed that the husband voluntarily undertook to support his stepchildren, and it follows therefore, that he did so as a parent. Section 61-116, R.C.M. 1947, now section 40-6-216 MCA, provides that, "[a] parent is not bound to compensate the other parent . . . for the voluntary support of his child,

-4-

without an agreement for compensation . . ." No such agreement was made in this case. We conclude that the District Court erred in considering the husband's support of his stepchildren in disposition of the marital estate.

The wife next challenges the court's failure to make findings of fact regarding her request for maintenance. The court merely made the conclusion of law that the wife's "request for support is denied." The husband contends that under section 48-322(1), R.C.M. 1947, now section 40-4-203(1) MCA, the court could only award maintenance if it found that the wife lacked sufficient property to support herself <u>and</u> that she was unable to support herself through appropriate employment. He argues that since the court did not make such findings, denial of maintenance was proper. The argument does not respond to the issue. The mere fact that an affirmative showing must be made as a precondition to the award, does not dispose of the District Court's duty under Rule 52(a), Mont.R.Civ.P., to make findings of fact on contested issues.

In Barron v. Barron (1978), _____ Mont. _____, 580 P.2d 936, 938, 35 St.Rep. 891, 894, this Court stated:

> ". . . the findings of fact required by Rule 52(a) is nothing more than a recordation of the essential and determining facts upon which the District Court rested its conclusions of law and without which the District Court's judgment would lack support. There are several reasons why it is important this record-ation be made. The purpose of requiring findings of fact is three-fold: 1) as an aid in the trial judge's process of adjudication; 2) for purposes of res judicata and estoppel by judgment; and 3) as an aid to the appellate court on review. 5A Moore's Federal Practice Sec. 52.06[1]."

Similarly, in Dahl v. Dahl (1978), _____ Mont. _____, 577 P.2d 1230, 1232, 35 St.Rep. 536, 539, this Court remanded for the District Court's failure to enter findings on requested attorney fees. Attorney fees, like maintenance, require an affirmative showing as a condition precedent to their award. See, section

-5-

48-327, R.C.M. 1947, now section 40-4-110 MCA; Allen v. Allen (1978), ___ Mont. ___, 575 P.2d 74, 76, 35 St.Rep. 246, 249.

Review of the court's findings, conclusions and decree in this case disclose no facts relating to the cited preconditions contained in section 48-322(1), R.C.M. 1947, now section 40-4-203(1) MCA. The flat assertion that "support is denied" was inadequate to dispose of this contested issue.

Finally, the wife asserts that the District Court failed to dispose of the parties personal property. The court findings on disposition of the personal property are confusing. In one finding, the court listed various household goods and other personal property which were acquired during the marriage and declared that the parties had an equal interest therein. The aggregate value of these items was $3,820. In the same finding, by separate paragraph, certain other personal property acquired during marriage was set aside for the wife. The total value of these items was $3,350. The next finding of fact stated that the husband owes the wife $235, "as the difference in values for the property held by each party."

The husband suggests that the court intended to give each party exactly one-half of the personal property acquired during marriage; so that the wife's $3,350 worth of personal property, plus $235, would equal one-half of $7,170 ($3,350 + $3,820). While conceivable, the court's statement that the parties had an equal interest in the $3,820 worth of personal property, leaves us unconvinced. On remand, the District Court should be more explicit in its distribution of the parties' personal property.

The cause is reversed and remanded with instructions that the District Court distribute the marital estate without

-6-

consideration of the husband's contributions toward support of the wife's children.  The District Court is further directed to make specific findings of fact concerning the wife's entitlement to maintenance and to clarify its distribution of the parties' personal property.

_____
                Justice

We Concur:

_____
        Chief Justice

_____

_____
            Justices


Mr. Justice John C. Harrison dissenting:

I dissent.  I would sustain the trial court's findings, allow the wife an additional $235.00, and terminate the matter without further proceedings.

_____
                Justice